[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of the sale of unimproved real property located at 15 Cliff Avenue, Darien, by the defendant, Howard A. Knobel, to the plaintiff, Carol O'Brien. O'Brien CT Page 13531 subsequently assigned her claim to Frederic A. Ohrn, hereinafter referred to as the plaintiff. The complaint contains six counts, all of which relates to the plaintiff's claim that the defendant misrepresented whether the subject property had been filled.
In the first count of the complaint, the plaintiff alleges that, in response to a question, the defendant specifically told him and O'Brien that the property had never been filled; that the defendant knew this representation was false; that the plaintiff and O'Brien relied on this representation; and that construction of a modular home by Ohrn for O'Brien was delayed because of the fraudulent misrepresentation. In the second count, the plaintiff alleges that a contract existed between the defendant, as seller, and O'Brien, as purchaser, which included a representation that the lot did not contain any waste; that the plaintiff and O'Brien relied on this representation; and that the construction of a modular home by the plaintiff for O'Brien was delayed because of the presence of waste. In the third count of the complaint, the plaintiff alleges that he agreed with O'Brien to construct a modular home on the subject premises for $206,000; that this amount did not include any expense for dealing with filled property; that because of the fraud committed by defendant the plaintiff incurred substantial unplanned expenses. In the fourth count, the plaintiff contends that he was injured by defendant's fraudulent misrepresentation regarding fill, in that it cost more money for him to construct a modular home than had been planned. In counts five and six of the complaint, the plaintiff and O'Brien claim recovery under General Statutes § 42-110b(a), the Connecticut Unfair Trade Practices Act (CUTPA), respectively.
The defendant filed an answer which generally denied the allegations of the complaint and which also contained three special defenses claiming that there was no contract between the plaintiff Ohrn and the defendant; that the plaintiffs improperly joined two causes of action; and that the defendant, as a seller of realty, was not subject to CUTPA.
The case was referred to Attorney Trial Referee Jules Lang, in accordance with General Statutes § 52-434(a)(4) and Practice Book § 428 et seq. The attorney trial referee conducted a trial and then filed his report containing the following findings of fact: (1) that the plaintiff O'Brien, who purchased the subject premises, assigned her claim to Ohrn; (2) that prior to entering into a contract, the defendant indicated to the plaintiff and O'Brien that to the best of his knowledge, he did not believe the CT Page 13532 lot had been filled; (3) that the plaintiff knew that a sewer had been constructed on the property, which required disturbing the earth; (4) that the plaintiff had to excavate to a depth of approximately eight feet because of the fill material found on the lot, rather than the four and a half feet excavation he had planned; (5) that the defendant's contract with O'Brien limits his representations involving subsurface conditions to his "best knowledge"; and (6) that the plaintiff is an experienced builder and was concerned about subsurface conditions, but the defendant had very limited experience with construction.
The attorney trial referee reached the following conclusions as a result of his findings of fact: (1) that a claim for fraudulent misrepresentation requires clear and satisfactory proof; (2) that an element of fraudulent misrepresentation is knowledge of its untruth by the defendant; (3) that the plaintiff had failed to establish this element by clear and satisfactory evidence; and (4) that the plaintiff had not sustained his burden of proving that the defendant knew that the fill had been deposited or that he was making a false statement. Hence, the attorney trial referee recommended that judgement should enter for the defendant.
The plaintiff thereafter moved, pursuant to Practice Book § 438, to correct the referee's report to reflect that: (1) the plaintiff specifically asked the defendant whether the lot had ever been filled, and that the defendant replied without qualification that it had not been filled; (2) the defendant answered the question about fill for the purpose of inducing the plaintiff to act upon his representation; (3) whether the plaintiff knew about the sewer was immaterial as he was interested in the status of that portion of the lot where the house was planned to be constructed; (4) when the defendant signed the contract between himself and O'Brien, it did not include a stamped statement that the defendant's representations were "to the best of [his] knowledge and belief"; (5) the agreement between O'Brien and the defendant contained a representation that the premises were not composed of filled land; (6) the defendant had a very intimate knowledge of the condition of the subject premises because, among other things, he owned the property since 1974; (7) the plaintiff relied upon the defendant's representation regarding fill; (8) the defendant knew that material had been placed on the subject premises in areas other than where the sewer was constructed; (9) in some places the fill was at a depth of nine feet and included plastic bags CT Page 13533 and tree stumps; (10) the plaintiff had incurred over $28,000 in expenses in order to remove the fill and debris; and (11) the defendant is in the trade or business of selling land.
The attorney trial referee declined to make any substantive changes in his report or recommendations except to agree with the plaintiff that: (1) in connection with the construction of the sewer, Darien town officials required the sewer contractor to remove materials placed on the property at the time of said sewer construction; (2) the defendant owned the property since 1974; (3) O'Brien incurred expenses because of the fill of about $200; (4) the defendant had conveyed other land he owned near the subject premises within a few months of his conveyance to O'Brien.
The attorney trial referee also pointed out, in further response to the motion to correct, that: (1) in addition to the stamp regarding representations being made only to the extent of the defendant's knowledge, the contract language itself contains this same limitation; (2) plaintiff never claimed the contract was unilaterally altered by the addition of the stamp, and in fact offered the contract, including the stamp, as his exhibit; and (3) the plaintiff's arguments about CUTPA were immaterial because the referee did not make a finding that the defendant made a fraudulent representation.
As to this court's standard of review of an attorney trial referee's findings of the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) the court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Town of Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Thus, generally this court's task consists of, first, determining whether "there was . . . evidence to support the attorney trial referee's factual findings," and, second, whether "the conclusions reached were in accordance with the applicable law." Thermoglaze Inc. v. Morningside Gardens, Co., 23 Conn. App. 741,746, 583 A.2d 1331, cert. denied, 217 Conn. 811,587 A.2d 153 (1991). CT Page 13534
In the present case, however, the plaintiff did not file any exceptions to the report. Practice Book § 439. It follows therefore that the factual findings by the referee must stand uncorrected because a failure to file exceptions constitutes, in effect, a waiver of the right to "attack the subordinate factual findings contained in the report." See Bernard v.Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings).
The plaintiff did, however, file objections to the report in accordance with Practice Book § 440, which provides that objections may be filed in the event a party contends that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found, or that there were erroneous evidentiary rulings, or for "other reasons why the report should not be accepted." The objections relate to the plaintiff's contentions that the referee erred in concluding that: (1) the defendant had qualified his representations by saying that they were to the best of his knowledge and belief; (2) the plaintiff is bound by such qualification on the part of the defendant; (3) the plaintiff had not proven his damages; and (4) the defendant's representations were not fraudulent.
The trial court must accept the referee's findings of fact in the absence of valid exceptions to the report, and therefore its task is limited to determining whether the legal conclusions "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, supra,18 Conn. App. 656; Practice Book § 440. In the present case, the law is clear that the elements of a fraudulent misrepresentation are: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury."First Charter National Bank v. Ross, 29 Conn. App. 667, 670,617 A.2d 909 (1992), appeal dismissed, 228 Conn. 203, 635 A.2d 903
(1994). It is also clear that the standard of proof for a fraudulent misrepresentation is that of clear and convincing evidence. Pelarinos v. Henderson, 34 Conn. App. 726, 731,643 A.2d 984 (1994).
The referee found as a fact that the plaintiff had failed to prove that the defendant knew that fill had been deposited on the subject premises, or that the defendant knew such statement was CT Page 13535 false. It is true that paragraph twenty seven of the Rider to the contract between Knobel and O'Brien provides that "[defendant] represents that the premises is not composed of `filled' land, that is, it does not contain any foreign objects, garbage or waste in the subsoil 36 inches below the present grade is undisturbed. This representation shall expressly survive the delivery of the deed." However, Section 1.C. provides that "[a] representation made by either party hereunder shall be deemed made only to the extent of the best knowledge and belief of that party." Since an element of fraud is knowledge on the part of the defendant that he knowingly made a false statement, it follows logically that, as the referee concluded, the plaintiff had not sustained his burden of proving a fraudulent misrepresentation.
It appears from reviewing the plaintiff's motion to correct, and his objections to the report, that he is attempting to substitute his own version of the facts for those found by the referee, a practice discountenanced in Argentinis v. Gould,23 Conn. App. 9, 19, 579 A.2d 1078, rev'd on other grounds,219 Conn. 151, 592 A.2d 375 (1991). In any event, no material error in the referee's report has been found, or any other sufficient reason why the report is unacceptable. See Practice Book § 443. The court finds, therefore, that the referee's conclusions were "properly reached on the basis of the subordinate facts found." See Practice Book § 440.
Accordingly, judgment enters against the plaintiff and in favor of the defendant on the plaintiff's complaint.
Statutory costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 8th day of December, 1995.
WILLIAM B. LEWIS, JUDGE